GUILLERMO PETTERSON, demandante y apelante, *v.* MIGUEL CONTRERAS PUIG y su esposa JUANA RAMÍREZ, MANUEL CAMPOS y su esposa EMERCIANA SILVA, y VENTURA MAYAYO, demandados y apelados.

No. 5237.—*Sometido:* Febrero 12, 1931. *Resuelto:* Junio 25, 1931.

*B. T. Pacheco,* abogado del apelante; los apelados no presentaron alegato.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Es·base de este pleito una tercera demanda enmendada interpuesta por Guillermo Petterson contra Miguel Contreras y su esposa Juana Ramírez, Manuel Campos y su esposa Emerciana Silva, y Ventura Mayayo. Ejercítanse en ella dos causas de acción, una sobre nulidad de procedimiento ejecutivo hipotecario y daños y perjuicios y otra sobre reclamación de *homestead.* Contestaron los demandados Contreras y Campos, oponiéndose. En la vista se ·practicó prueba por ambas partes y sometido el caso definitivamente a la corte, lo resolvió por sentencia en contra del demandante. Este interpuso entonces el presente recurso de apelación.

Sólo la parte apelante presentó alegato y compareció a la vista del recurso. El alegato del apelante no cumple con las reglas de esta corte de tal suerte, que debería desestimarse el recurso. Preferimos sin embargo, en el ejercicio de nuestra discreción, examinar el asunto en su fondo. La transcripción es completa.

El demandante era dueño de una casa y solar en Santurce que hipotecó a favor de Miguel Contreras y su esposa para garantizar la suma de trescientos dólares que les tomara a préstamo. Luego hipotecó la misma finca a favor de Josefa Soto por quinientos dólares, a favor de Manuel

Campos por cuatrocientos dólares y de Ventura Mayayo por ochocientos dólares. Cantidades adicionales se garantizaron en los cuatro casos para el pago de intereses y costas.

Para cobrar su crédito Contreras y su esposa iniciaron un procedimiento ejecutivo que terminó con la venta en pública subasta de la finca, adquiriéndola Campos y cobrando también su crédito la acreedora hipotecaria Sra. Soto. Luego el acreedor Mayayo compró a Campos pagándole lo que él había desembolsado.

Así las cosas se inició éste pleito por Petterson contra Contreras, Campos y Mayayo como ya se ha dicho. Los motivos de nulidad alegados fueron: 1, que en el escrito inicial no se alegó que el crédito estuviera vencido, ni se especificó la cantidad líquida y cierta de los intereses cobrados; 2, que en la orden de requerimiento no se mandó citar, ni notificar del procedimiento, a los acreedores posteriores; 3, que no se entregó al ejecutado copia de la escritura en que se constituyó el crédito, ni de la certificación del registro, ni el márshal al requerirlo de pago le apercibió de que si no pagaba las sumas reclamadas dentro de treinta días, su finca sería ejecutada; 4, que no se embargó la finca hipotecada antes de ejecutarse, y 5, que el crédito se ejecutó sin estar vencida la deuda, ya que había sido prorrogado de palabra el plazo fijado en la escritura.

■ Comenzaremos nuestro estudio por el quinto motivo. De acuerdo con la documentación presentada, se cobró la deuda por la vía judicial cuando ya estaba vencida, pero el demandante alegó y declaró apoyándolo uno de sus hijos que el acreedor Contreras de palabra había prorrogado el término de vencimiento y que cuando el dicho acreedor se dirigió a los tribunales estaba vigente la prórroga. Negó Contreras tal hecho y sostuvo su negativa en el juicio. El conflicto entre los testimonios fué expresamente resuelto por la corte en contra del demandante, y no se ha demostrado que lo hiciera actuando con pasión, prejuicio o parcialidad. El motivo, en tal virtud, no puede sostenerse.

█ Tampoco está bien fundado el primero. En el escrito inicial radicado el 25 de noviembre de 1924, se alegó que el crédito de trescientos dólares se constituyó el 4 de abril de 1922 y venció el 4 de abril de 1923, con el interés del 1 por ciento mensual asegurado hasta $25, y que en la fecha de su vencimiento, ni en ninguna otra, el deudor había satisfecho al acreedor el principal ni los intereses asegurados hasta la suma de $25, aunque de ésta .excedían. En tal virtud el crédito era exigible cuando el escrito inicial fué presentado y así aparecía claramente de lo alegado en éste.

█ Para demostrar que no existe el tercer motivo y el cuarto, bastará transcribir lo que sigue de la relación del caso y opinión del juez sentenciador. Es así:

"No requiere la ley hipotecaria y el reglamento para su ejecución, que se entregue al ejecutado copia de la escritura de constitución del crédito, ni de la certificación del Registro. Con el escrito inicial del procedimiento es que se deben presentar, y si el juez al examinar el escrito y los documentos, considera cumplidos los requisitos de la ley, entonces debe dictar auto de requerimiento para que dentro del término de 30 días se verifique el pago de la suma reclamada, bajo apercibimiento de procederse a la subasta de los bienes hipotecados. Arts. 169 y 170 del Reglamento. Todo esto se hizo en este caso, según aparece de los autos, y el Márshal al hacer la notificación al deudor no sólo le entregó copia del escrito inicial o demanda, del auto o resolución de la corte, y del mandamiento, sino que le dió lectura a éste en presencia del ejecutado, y en dicho mandamiento, como en la resolución, se hace constar lo que le ocurriría al ejecutado si no pagaba. El requerimiento en un ejecutivo hipotecario es similar al emplazamiento en un pleito ordinario. Mestre v. Michelena, 30 D.P.R. 154. El objeto de la ley fué sustancialmente cumplido en este caso.

"Aceptando que el márshal no embargó previamente la propiedad sujeta a ejecución, este requisito no era necesario para que la corte adquiriera jurisdicción. Menéndez v. Cobb, 28 D.P.R. 757; Trueba v. Martínez, 33 D.P.R. 461; Thyboe v. San Juan Fruit Co., 36 D.P.R. 892."

█ El único motivo que está bien fundado es el segundo, pero no tiene el alcance que le atribuye el demandante.

Es cierto que no se mandó por el juez, a la vez que ordenó el requerimiento de pago, que se notificara del auto a los acreedores posteriores, vecinos de San Juan, que constaban en la certificación del registro, y que no se expresaron los nombres de dichos acreedores en los edictos, todo ello con infracción de los artículos 171 y 172 del reglamento para la ejecución de la Ley Hipotecaria, pero, como dice el juez sentenciador:

"La omisión por parte de un ejecutante de notificar a los subsiguientes acreedores posteriores en una ejecución de hipoteca es meramente un error subsanable. Voight v. El Registrador, 2 S.P.R. 145. No es la misma posición la de un segundo acreedor hipotecario que la del deudor principal. Arvelo v. Banco Territorial, 25 D.P.R. 728. El objeto de la notificación del auto, es que las personas interesadas, a que se ha hecho referencia, puedan concurrir a la subasta si les conviniera (Hernández & Co. v. Ramírez, 8 D.P.R. 98), para que después puedan cancelarse las hipotecas posteriores (Montes de Oca v. Báez, 23 D.P.R. 708).

"En el presente caso se anunció la subasta en el periódico 'La Correspondencia,' que se edita en San Juan, en las ediciones de los días 31 de diciembre, 1924, y 7, 14 y 21 de enero, 1925, para tener efecto el día 22 de dicho último mes y los acreedores posteriores... tenían conocimiento de la subasta, pues resulta de la prueba, que a ella concurrieron varios licitadores, entre ellos Manuel Campos, casado con Emerciana Silva, acreedor posterior por la suma de $500, y a quien le fué adjudicada la finca por la suma de $900 y de esta cantidad se pagó el crédito del ejecutante por $300 y también se pagó a Josefa Soto Valentín, otro de los acreedores posteriores por la suma de $500, quien no es parte en este juicio, que también había establecido un procedimiento ejecutivo hipotecario para el cobro de su crédito, según aparece de las declaraciones de Miguel Contreras y Manuel Campos; y en cuanto al otro acreedor hipotecario Ventura Mayayo, él es hoy el dueño de la propiedad, adquirida por compra a Manuel Campos, por escritura de 14 de marzo, 1925, o sea el mismo día en que el márshal otorgó a aquél la escritura de venta judicial, y nada pide en este caso."

Lo expuesto dispone de la primera causa de acción. Si el procedimiento no fué nulo, no cabe ni siquiera entrar en el examen de la prueba con respecto a los daños y per-

juicios. Aun entrando sería difícil encontrar base para concederlos. La prueba con respecto al valor de la casa y el solar es contradictoria. El demandante declaró que ascendía a $6,000, mientras que otros testigos declararon que sólo valdría $2,500, y ya conocemos los cuatro gravámenes hipotecarios que pesaban sobre ella.

■ Refiriéndose a la segunda causa de acción, se limitó la corte sentenciadora a decir que no hacía "pronunciamiento alguno por carecer de jurisdicción, toda vez que la cantidad envuelta no excede de $500. *Arroyo* v. *Corte de Distrito de San Juan,* 38 D.P.R. 10; *Duchesne* v. *Corte de Distrito de San Juan,* 38 D.P.R. 14, y *Hedilla* v. *Monagas,* 38 D.P.R. 27." Su conclusión fué correcta.

*Debe confirmarse la sentencia apelada.*