TRUEBA ET AL., DEMANDANTES Y APELANTES, *v.* MARTÍNEZ ET AL., DEMANDADOS Y APELADOS.

No. 2792.—*Visto:* Junio 22, 1923.  *Resuelto:* Junio 27, 1924.

DEFENSOR *ad Litem*—NOMBRAMIENTO DE DEFENSOR A MENORES NO RESIDENTES—JURISDICCIÓN—CITACIÓN.—La teoría de que una corte no adquiere jurisdicción para nombrar defensor a un menor hasta que éste haya sido emplazado es una doctrina razonable cuando se trata de menores residentes, pero no es aplicable a casos de menores no residentes.

JURISDICCIÓN — SOMETIMIENTO POR MENORES — EMPLAZAMIENTO DE MENORES. — Cuando unos menores comparecen ante la corte con jurisdicción por razón del *situs* de la propiedad objeto del litigio y piden que se les haga partes en el procedimiento y ellos son admitidos y se les nombra un defensor *ad litem* para que los represente, ellos se consideran sometidos a la jurisdicción de la corte y obligados por su fallo, aún cuando ningún emplazamiento se les hubiera servido.

ID.—ID.—DEFENSOR *ad Litem.*—El nombramiento de un defensor *ad litem* es materia procesal y no de jurisdicción.

REIVINDICACIÓN—PARTES NECESARIAS—BIENES GANANCIALES.—La doctrina de los casos de *Miranda v. Registrador,* y *Muñoz v. Registrador,* 28 D. P. R. 395 y 26 D. P. R. 780, respectivamente, no es de aplicación cuando ambos cónyuges dueños de la finca ejecutada habían fallecido al interponerse la demanda.

SENTENCIA de *Luis Campillo,* J. (San Juan, Primer Distrito), en pleito de reivindicación, inexistencia de adjudicación y otros extremos, declarando sin lugar la demanda con las costas.  *Confirmada.*

*M. Tous Soto* y *A. J. Amadeo,* abogados de los apelantes; *E. Acuña,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR FRANCO SOTO, emitió la opinión del tribunal.

Los demandantes y apelantes ejercitan dos causas de acción.  Una es la de reivindicación genérica de ciertos condominios en una finca rústica denominada "Providencia"; y la otra, que es la base de la anterior, va dirigida a que se

declare inexistente la adjudicación que de dicha finca llevó a cabo el Márshal de la Corte de Distrito de San Juan a favor de Martínez Vallés e Isern Barrancos, en el declarativo que sobre cobro de un crédito hipotecario siguieron contra la Sucesión de María de Jesús Urrutia, de cuya sucesión traen causa los demandantes.

La acción reivindicatoria sustancialmente se funda en la propiedad o título que alegan los demandantes de los condominios reclamados y en la posesión actual del inmueble por las sociedades Valldejuly, Rodríguez y Compañía, Limitada, y Rosales y Compañía. Y en relación con la inexistencia de la adjudicación del inmueble se alega: (*a*) La adquisición del mismo por Bernardo Suárez Rodríguez y su esposa María de Jesús Urrutia, durante el matrimonio, a título oneroso y con dinero de la sociedad de gananciales; (*b*) La condición de los demandantes como únicos y universales herederos de las personas en quienes radicaba el título de propiedad de la finca al promoverse el declarativo para el cobro de la hipoteca que la gravaba; y (*c*) Alegaciones de irregularidad y omisiones cometidas en dicho declarativo, a saber: I. Falta de citación personal y presuntiva de los demandantes Trueba y Suárez. II. Falta de su comparecencia en el litigio. III. Ilegalidad e ineficacia de la sentencia dictada. IV. Nulidad absoluta, *per se*, de la subasta de la finca y consiguiente inexistencia de la adjudicación realizada en ella.

En su contestación los demandados establecieron una negación general de la primera causa de acción; y también de la segunda, negando la condición de herederos alegada por los demandantes y la existencia de los vicios e irregularidades de procedimiento que se relatan en la demanda, afirmando en contrario que todos y cada uno de los procedimientos en el cobro de la hipoteca fueron correctos y acomodados a los preceptos de ley y prácticas judiciales.

Además de sus negaciones los demandados establecieron como defensa: su condición de terceros hipotecarios, la pres-

cripción extintiva de la acción de nulidad y la adquisitiva
en favor de los actuales poseedores invocando para esta úl-
tima el artículo 1858 del Código Civil revisado.

Sentadas de este modo las bases del litigio, la corte infe-
rior resolvió el caso por sus méritos y dictó sentencia decla-
rando sin lugar la demanda, estableciendo en su opinión,
como hechos probados, los siguientes:

"A virtud de la prueba y por haber resultado de ella que don
Bernardo Suárez Urrutia vive, los demandantes modifican su de-
manda, limitando su reclamación a las de dos terceras partes de la
herencia, o sea a la que alegan corresponderle como únicos herede-
ros de su madre Antonia Suárez Urrutia, de su tío Jesús Suárez
Urrutia, y de sus premuertas hermanas Mercedes y María Teresa.

"Entendemos se ha probado que Bernardo Suárez Rodríguez ins-
tituyó como herederos a sus hijos legítimos Bernardo, Jesús y Ma-
ría Antonia Suárez Urrutia, y a su segunda esposa doña Vicenta
Fontanals, el tercio de todos sus bienes con arreglo a las prescrip-
ciones del Código Civil, pero no se ha probado que sean herederos
de Jesús Suárez Urrutia y mucho menos sus únicos herederos.

"La certificación de defunción presentada para acreditar el fa-
llecimiento de éste, prueba de que falleció en 8 de febrero de 1903,
pero en modo alguno puede probar que muriera soltero, y que los
demandantes son sus únicos herederos en ausencia de toda otra
clase de prueba, como sucede en el caso presente.

"De la prueba presentada resulta que Bernardo Suárez, tío de
los demandantes, vive y tiene hijos y siendo este hecho cierto y ad-
mitido por las partes, tendríamos que reconocer que Bernardo era
un heredero *in capita* con un derecho igual al que correspondería
a todos los demandantes que heredarían por estirpes.

"Resulta asimismo probado que al fallecer Jesús Suárez Urrutia
en 8 de febrero de 1903, se encontraba legalmente casado con Pe-
trona de Jesús Santana, quien por virtud de lo preceptuado en los
artículos 821 y 822 del Código Civil revisado entonces vigente, te-
nía reconocidos derechos sucesorios, así en la herencia intestada
como en la testada en concurrencia con descendientes y ascendien-
tes; no siendo dable en el caso presente fijar el alcance y extensión
de tales derechos sucesorios en razón a que no se ha traído prueba
alguna en demostración si el dicho Jesús Suárez Urrutia otorgó o
nó testamento y en todo caso quiénes fueron sus herederos testa-
mentarios o legítimos.

"De todo ello resulta que los demandantes sólo tenían derecho a heredar en relación con su abuela materna, una tercera parte de la mitad; y en relación con su abuelo un tercio de dos terceras partes de la otra mitad; no pudiendo establecerse que recibieran derecho hereditario alguno en relación con su tío Jesús, en razón a que no se ha probado en forma alguna que fueran herederos testamentarios ni intestados del dicho Jesús Suárez.

"Como el ejercicio de una acción reivindicatoria impone al demandante la obligación de probar su título sobre la cosa reivindicada de un modo claro que no deje lugar a dudas sobre la extensión de ese título, la corte llega a la conclusión de que, en el presente caso, se hace de todo punto imposible con las pruebas aportadas, fijar clara y determinadamente el alcance del condominio que los demandantes reivindican en este pleito.

"Que de la demanda presentada por el administrador judicial, Don Pedro de Arana, en el procedimiento seguido contra las personas que componían la Sucesión demandada y cuya nulidad se pide, consta el nombre de las que formaban la sucesión demandada de cuyos nombres tenían conocimiento los demandantes, y para los desconocidos se publicaron los correspondientes edictos.

"Resulta asimismo probado que en aquel procedimiento se expidieron los emplazamientos, pues aún cuando no figura en los autos, se desprende claramente de la publicación de los edictos, como también que la Corte tenía jurisdicción a virtud de tratarse de una acción real.

"Resulta asimismo probado, que la orden dictada por la corte que conoció del procedimiento a que hacemos referencia, es válida ya que aparece haber sido librada a virtud de *affidavit* presentado y jurado por uno de los abogados de los demandantes, y con el que se demostró a la corte, que habían demandados fuera de la Isla, que existía motivo de acción y que eran partes necesarias o legítimas en el pleito.

"Resulta probado que los menores fueron citados por edictos, por estar ausentes, y que, la corte a petición de uno de ellos, procedió al nombramiento de un defensor judicial, el que tomó posesión de su cargo y actuó como tal, nombrando abogado que lo representara y el que compareció en el procedimiento.

"Ha quedado probada la incapacidad de Benigno Trueba Gutiérrez declarada por la Corte de Distrito de San Juan en 11 de octubre de 1905; el nombramiento de tutor del mismo recaído en favor de Bernardo Suárez Urrutia, quien residía entonces en Puerto

Rico; y· el apoderamiento que con el carácter de tutor hizo aquél en favor de Herminio Suárez y Suárez, al emprender un viaje a España acompañando al incapacitado.

''Que en el año 1907 Antonio Trueba Suárez, hijo del incapacitado Benigno, vino a Puerto Rico y residió próximamente unos seis meses en Canóvanas en la casa de Fernández & Sobrino, uno de cuyos socios era Herminio Suárez y Suárez.

''Que promovido en la Corte de San Juan el pleito en ejecución de hipoteca tantas veces · mencionado, y ordenada la citación por .edictos de la sucesión demandada, durante el período de publicación de aquéllos, el dicho Antonio Trueba Suárez compareció en aquel pleito por su abogado E. Acuña y alegando ser uno de los demandados en dicha acción, como hijo legítimo de Benigno Trueba Gutiérrez y de María Segunda Suárez, esta última hija y heredera a su vez de María de Jesús Urrutia; y encontrarse en minoría de edad, siendo no obstante mayor de catorce años; y carecer de persona legalmente capacitada para representarla en tal pleito, por la incapacidad declarada de su padre; y también alegando que en idénticas circunstancias se encontraban sus legítimos hermanos Benigno, Mercedes, César Carlos, María Luisa y Gloria, cuyas edades consignó, y todos ellos residentes en España, pidió a la corte el nombramiento de un defensor que los representase en dicho pleito, nombramiento que dicha corte hizo en favor del susodicho Herminio Suárez y Suárez.

'' Que los demandados Trueba Suárez estuvieron representados en aquel pleito por el Abogado Eduardo Acuña Aybar, en razón a la designación que hiciera el defensor Herminio Suárez, quien a su vez actuó en el pleito en consonancia con las indicaciones del abogado, suministrando a éste las informaciones y elementos de defensa de que podía disponer en beneficio de los menores demandados.

''Que habiendo ocurrido durante el curso de dicho pleito ·el fallecimiento en España del incapacitado Benigno Trueba Gutiérrez, se constituyó el consejo de familia de los menores Trueba Suárez, de acuerdo con la ley española y dicho consejo nombró tutor de aquéllos, al propio que lo había sido del incapacitado, o sea a Bernardo Suárez Urrutia; y también el aludido consejo facultó al tutor nombrado, para comparecer en el pleito y constituir y sustituir mandatario con tal fin, lo que efectuó el tutor apoderando convenientemente al mismo Herminio Suárez y Suárez, que como .queda dicho, venía actuando en el pleito de referencia como defensor de los menores.

''También resulta probado que don Jesús María Inocencio Suárez

Urrutia, falleció con anterioridad al iniciamiento del pleito, y por tanto no podía ser emplazado ni notificado.

"Que en aquel procedimiento la corte que conoció del caso dictó sentencia a favor de los demandantes, y a virtud de ella se llevó a efecto la subasta, y en su consecuencia, la adjudicación al mejor postor, que lo fué don Octavio Martínez Vallés, habiendo pasado más tarde y encontrándose hoy en poder de los demandados en virtud de sucesivas trasmisiones.

"Se ha probado que los menores Trueba Suárez, percibieron de don Carlos MacCormick, uno de los hoy demandados, el importe de una hipoteca que gravaba la finca, a favor de su causante Benigno Trueba Gutiérrez.

"Resulta asimismo probado que los demandados no intervinieron en el pleito seguido por el administrador judicial, D. Pedro Arana, seguido contra la Sucesión de María de Jesús Urrutia; que el título de adquisición de Octavio y Petra Martínez Vallés y Adelaida y Demetria Isern, fué inscrito en el registro de la propiedad, sin que de su inscripción aparezca ninguna causa en que fundar la nulidad teniendo por tanto la condición de terceros.

"Resulta asimismo probado que el Márshal de la Corte de Distrito de San Juan, en 20 de noviembre de 1909, vendió judicialmente la finca objeto de la reivindicación, a Octavio y Petra Martínez Vallés y Adelaida y Demetria Isern Barrancos; que Adelaida y Demetria Isern vendieron en 4 de enero de 1910 a don Marcos Tomás Caneja; que en enero 5 de 1910, este último y su esposa vendieron la citada finca a don José E. Benítez Castaño.

"Que en 30 de marzo de 1910, don Octavio Martínez Vallés, Doña Petra Martínez Vallés y los esposos D. José E. Benítez Castaño y Doña Carlota Benítez Carrillo, vendieron la totalidad de la finca a don Rafael López Landrón, y que ese mismo día don Rafael López Landrón asistido de su esposa la vendió a don Juan Carlos MacCormick.

"Resulta probado que don Juan Carlos MacCormick Hartman y su esposa en 20 de mayo de 1910, la vendieron a la sociedad mercantil 'Rosales y Compañía' y que con fecha 15 de septiembre de 1919, la citada finca fué habida por don Enrique González y Rodríguez, por compra en pública subasta a don Manuel V. Domenech como *trustee* de la quiebra de la corporación 'Compañía Azucarera de la Carolina', también llamada 'Carolina Sugar Company', y que don Enrique González asistido de su esposa vendió dicha finca a la sociedad civil agrícola e industrial 'Valldejuly, Rodríguez & Com-

pañía, Limitada', en 10 de diciembre de 1919, todos cuyos traspasos fueron inscritos en el registro de la propiedad."

En su apelación ante esta Corte Suprema, los apelantes asignan como errores:

"Primero: No reconocer a favor de los señores Trueba y Suárez la cualidad de herederos del finado Jesús Suárez y Urrutia, desconociendo el derecho declarado por el Código Civil revisado en sus artículos 886, 914, 916 y 920.

"Segundo: Declarar prescrita la acción ejercitada haciendo indebida aplicación del artículo 1267 del Código Civil, por confundir la acción de nulidad de contrato con la de nulidad de actuaciones judiciales e inexistencia de contrato, que ejercita la parte actora.

"Tercero: Reconocer a favor de los demandados la prescripción adquisitiva del dominio de la finca Providencia aplicando indebidamente el artículo 1858 del Código Civil.

"Cuarto: Independientemente de su ineficacia, haberse dado a la sentencia dictada en el juicio declarativo seguido por los herederos de Pedro Arana contra la sucesión de María de Jesús Urrutia, una indebida extensión, entendiendo obligado a su cumplimiento al señor Bernardo de Jesús Suárez y Rodríguez, quien no fué parte en el otorgamiento de la obligación reclamada ni en el litigio promovido para la efectividad de ella, en cuyos procedimientos ni aún fué nombrado.

"Quinto: El tribunal sentenciador incurrió asimismo en error de derecho suficiente para producir la revocación de la sentencia apelada al admitir en evidencia la escritura otorgada en Barcelona, Reino de España, el día 15 de enero de 1909 y bajo el número 54 ante el notario don Antonio Gallardo y Martínez, al efecto de probar con ella la constitución de un consejo de familia de los menores Trueba y Suárez, el nombramiento de tutor por dicho consejo de familia y los actos de éste, así como al estimar suficiente tal escritura como prueba de dichos extremos.

"Sexto: Apreciar válidas en derecho las actuaciones judiciales del declarativo en cobro de crédito hipotecario seguido ante la Corte de Distrito de San Juan por Pedro Arana, mediante su administrador judicial en un principio y más tarde por sus herederos señores Martínez Vallés e Isern Barrancos, contra la sucesión de la señora María de Jesús Urrutia, declarando válida la sentencia e ineficaz la subasta de la finca Providencia y su adjudicación a los demandados.

"Séptimo: Indebida aplicación del artículo 34 de la ley hipotecaria e inaplicación del artículo 33 del mismo cuerpo legal, desconociendo que la acción ejercitada se funda en título inscrito en el registro de la propiedad en fecha anterior al invocado en contrario por la parte demandada y desconociendo también, que existen vicios o causas de la acción ejercitada que resultan claramente de la inscripción del título en el registro de la propiedad.

"Octavo: La sentencia apelada, al estimar la validez de la subasta de la finca Providencia y procedimientos judiciales que dieron lugar a la misma y la eficacia de la inscripción en el registro de la propiedad de San Juan de la adjudicación del mismo inmueble a favor de Octavio y Petra Martínez Vallés y Adelaida y Demetria Isern y Barrancos, infringe las prescripciones contenidas en la enmienda quinta de la constitución de los Estados Unidos declarativas del principio universal de derecho de que nadie puede ser privado de su propiedad sin un debido procedimiento de ley y de la regla de derecho político que no se ocupará la propiedad privada sin justa compensación; porque los procedimientos judiciales del juicio declarativo en que se decretó tal subasta, la subasta misma y la inscripción en el registro de la propiedad de la adjudicación del inmueble Providencia no constituyen debido procedimiento de ley y la aplicación del artículo 34 de la ley hipotecaria con la extensión que se le atribuye en la sentencia apelada, equivale a la ocupación de la propiedad privada sin audiencia y sin justa compensación."

Los apelantes discuten cada error en tan diversos aspectos y detalles que el alegato se hace demasiado extenso, pero ello representa un gran esfuerzo y es un trabajo laborioso y hábil.

Como la acción reivindicatoria se funda en la inexistencia de los procedimientos que en el declarativo sirvieron de base al título de los demandados, y sobre la omisión o defectos de tales procedimientos se levanta aquella acción, para tener fuerza legal el título de los apelantes y sobreponerlo al de los apelados, parece más lógico que consideremos con preferencia el sexto error en que se imputan dichas omisiones o defectos pues según el resultado a que pueda llegarse con vista de los mismos, será o nó necesaria la consideración de los restantes. De todos modos invertiremos el or-

den de los errores a medida que el desarrollo natural de la discusión del asunto lo exija.

Los errores de procedimiento que sostienen los apelantes cometidos en el declarativo podemos dividirlos en dos grupos: en el primero comprenderemos lo que podemos llamar meras irregularidades y en el segundo aquellas omisiones o defectos que tienen el carácter de vicios jurisdiccionales.

La infracción a que aluden los apelantes del artículo 251 del Código de Enjuiciamiento Civil, en cuanto al anuncio de la subasta, es una mera irregularidad que no afecta al comprador de buena fe, y no puede considerarse en una acción colateral, como ocurre en este caso, para anular la subasta que originó la venta y adjudicación de la finca hipotecada. *Henna* v. *Saurí y Subirá,* 22 D.P.R. 836, y *Solá* v. *Castro,* 32 D.P.R. 804.

Se sostiene en primer lugar, como cuestión jurisdiccional, que no hubo citación personal de los menores Trueba Suárez y que tampoco tuvo lugar la citación presuntiva (*constructive*).

La afirmación de los apelantes se funda en que no aparece de los autos la existencia del emplazamiento original. La corte inferior admite que no existe en los autos dicho emplazamiento original, pero llega a la conclusión de su existencia por inferencia de su publicación en los edictos. El punto así resuelto se convierte para su examen en una cuestión legal. Sin embargo, todas las cuestiones que los apelantes levantan en relación con la negativa de la existencia del emplazamiento original y las irregularidades que señalan haciendo insuficiente el emplazamiento por edictos, carecen de todo interés para ser consideradas en esta ocasión, toda vez que los menores Trueba Suárez, debidamente representados, verificaron su comparecencia, ejercitando todas las defensas y privilegios que estuvieron a su alcance durante la sustanciación del procedimiento ordinario para el cobro de la hipoteca. El primer edicto citando a dichos menores se publicó el 23 de abril de 1907 y tres días antes de

su publicación, o sea el 20 del mismo mes y año, Benigno Trueba y Suárez, uno de los menores demandados, acogiéndose a los artículos 56 y 57 del Código de Enjuiciamiento Civil, compareció en el pleito solicitando para él y sus demás hermanos demandados, hoy apelantes, el nombramiento de un defensor que les representara en la reclamación que se les había establecido. La orden de la corte inferior designando a Herminio Suárez como defensor *ad litem* de los menores, se dictó el 25 de abril de 1907.

No obstante tener lugar la comparecencia de los menores en la fecha indicada y el nombramiento de defensor para completar su personalidad, se dejó transcurrir el término de ley para excepcionar o contestar la demanda, y en 11 de julio de 1907 se les acusó la rebeldía, la que se anotó en la misma fecha. En 5 de agosto de 1907, haciéndose uso de lo que dispone el artículo 140 del Código de Enjuiciamiento Civil, se pidió que se abriera la rebeldía, y la corte así lo acordó en resolución de 12 de agosto de 1907. En el récord del declarativo que es una certificación en relación y no una certificación literal de los procedimientos que tuvieron lugar en aquel juicio, aparece además que se excepcionó y contestó la demanda y que después de visto el caso en sus méritos se dictó sentencia ordenando el cobro del crédito hipotecario mediante venta de la finca hipotecada. Se hace constar también que en aquellas alegaciones de defensa el abogado compareció a nombre del defensor y directamente a nombre de los menores. No se insertan literalmente dichas alegaciones. La certificación en relación no es una copia fiel de los procedimientos y cuando no es clara en sus términos o se ofrecen dudas en su interpretación, éstas deben resolverse en favor de que tales procedimientos se llevaron en debida forma. El hecho de comparecer el abogado a nombre del defensor judicial, implica la aceptación del cargo por el defensor sin necesidad de que apareciera de otro modo su aceptación expresa.

Pero los apelantes sostienen la falta de jurisdicción de

la; corte inferior al nombrar un defensor judicial a los menores Trueba Suárez porque siendo menores de edad no fueron emplazados personalmente. Si se atiende a los términos de la demanda en cobro del crédito hipotecario, se notará que las citas de autoridades que hacen los apelantes distan mucho de ser aplicables al presente caso. En la demanda declarativa se alega que María Segunda Suárez Urrutia al morir le sobrevivieron su esposo y varios hijos, pero se alega también, que se carece de información acerca del número y nombre de los hijos y del punto de residencia. De esta alegación se desprende la no residencia en Puerto Rico de los herederos de María Suárez Urrutia, ni la edad de los hijos.

En el caso de *Dapena v. Dominicci,* 12 D.P.R. 67, se resolvió que "cuando la demanda se dirige contra una sucesión deberá expresarse el nombre de cada uno de los herederos o darse alguna razón que justifique la omisión de dicho requisito." Y podemos considerar como razón suficiente en este caso la de estar fuera del alcance o conocimiento de los ejecutantes de la hipoteca, el número, residencia y demás circunstancias personales de los componentes de la sucesión demandada.

"No hay afirmación alguna en la declaración jurada ni en las alegaciones sobre la edad de estos menores. Para sostener los procedimientos de la corte inferior, debemos presumir, mientras lo contrario no aparezca, que estos menores tenían más de catorce años, y en ese caso la ley no exigía que se notificara el emplazamiento ni la demanda a la madre o a otra persona en cuya custodia se encontraran." *Emeric v. Alvarado,* 64 Cal. 597.

La teoría de los apelantes de que la corte no adquiere jurisdicción para nombrar un defensor a un menor hasta que éste haya sido emplazado es una doctrina razonable cuando se trata de menores residentes, pero no parece aplicable a los casos no residentes y la razón de esta diferencia parece consistir en suponer lógicamente que el menor residente en Puerto Rico se hace físicamente posible de encontrarle y

está dentro de la jurisdicción dél territorio y por ello debe ser emplazado personalmente.

·Por otra parte, este es un caso en que se trata de una acción real, del cobro de un crédito hipotecario, sin que haga diferencia el procedimiento ordinario que se estableció para su cobro'; la corte tuvo jurisdicción por razón del situs de la propiedad hipotecada, y se ha sostenido que cuando unos menores comparecen y piden que se les haga partes en el procedimiento y ellos son admitidos y se les nombra un defensor *ad litem* para que los represente ellos se consideran sometidos a la jurisdicción de la corte y obligados por su fallo, aún cuando ningún emplazamiento se les hubiera servido. Y esto es lo ocurrido en el declarativo que impugnan los apelantes.

"Sin embargo, si la acción es una *quasi in rem,* en que se suplica no una sentencia personal sino la determinación del título sobre cierta propiedad, y la corte tiene jurisdicción por razón del situs de la propiedad, una notificación de emplazamiento en forma sustituta puede ser válida en cuanto a niños, lo mismo que en cuanto a demandados adultos, y se ha resuelto que en tal acción la sentencia es obligatoria en el sentido de conferir un buen título a un comprador en subasta pública, en contra de dueños menores de edad para quienes se nombró un defensor *ad litem* que nombró abogado y gestionó la defensa, aún cuando no hubiera habido notificación a los menores. Cuando los menores comparecen y solicitan ser hechos partes y son luego admitidos y se les nombra un defensor, se ha resuelto que ellos estaban ante la corte y quedaron obligados por su sentencia, aunque jamás se les notificara el emplazamiento." 14 R.C.L. 285.

El carácter mismo de la acción real que fué objeto del juicio declarativo para la ejecución de la hipoteca, hace desaparecer la importancia que podía tener la cuestión levantada por los apelantes de que era necesario el embargo de la finca hipotecada para que la corte inferior adquiriera jurisdicción sobre los demandados en aquella acción.

"Este procedimiento es constitucional sólo cuando la acción tiene por objeto afectar el status del demandado. Si el objeto de la ac-

ción es sujetar la propiedad del demandado dentro del estado a ejecución librada en virtud de sentencia contra él, tal propiedad debe ser embargada al comenzarse el procedimiento. Después de un embargo y la publicación de los edictos en la forma dispuesta por la ley, la acción se convierte en efecto en un procedimiento *in rem* contra la propiedad embargada, y la sentencia es una *in rem* contra tal propiedad, y no *in personam* contra el demandado. Una sentencia dictada contra un demandado que no ha sido personalmente notificado con el emplazamiento y cuya propiedad no había sido previamente embargada, sería nula por faltar el debido procedimiento de ley. Esta doctrina importante ha sido recientemente establecida por la Corte Suprema de los Estados Unidos y es, desde luego, obligatoria para todas las cortes de los Estados, a pesar de que los estatutos de muchos Estados, como sucede en California, pretenden autorizar una sentencia contra una persona no emplazada, bajo una mera publicación de edictos.'' 2 Estee's Pleadings, p. 899.

''Pennoyer v. Neff, 95 U.S. 728; Hart v. Sansom, 110 id. 151; Belcher v. Chambers, 53 Cal. 635; Denny v. Ashley, 12 Colo. 165, 20 Pac. 331; Smith v. Montoya, 1 West Coast Rep. 152; McKinney v. Collins, 88 N.Y. 216; véase Perkins v. Wakeham, 86 Cal. 580; 21 Am. St. Rep. 67. La ejecución de una hipoteca es por su naturaleza un procedimiento *in rem* contra la propiedad hipotecada y el emplazamiento puede notificarse a un no residente por medio de edictos. *La Fetra v. Gleason,* 101 N.Y. 246.'' *Id.,* nota 99.

Los apelantes insisten, sin embargo, en la nulidad del nombramiento de defensor judicial porque en la petición y en la designación de defensor no se cumplieron los requisitos que prescribe el artículo 77 de la ley sobre procedimientos legales especiales, aprobada en marzo 9 de 1905, (Comp. sec. 1616), en relación con lo que determina el artículo 230 del Código Civil. Como estas disposiciones legales son de carácter adjetivo, no creemos que puedan prevalecer sobre las prescripciones que en general estatuye el Código de Enjuiciamiento Civil que tienen el mismo objeto. El nombramiento de defensor se solicitó y acordó con arreglo a los artículos 56 y 57 del Código de Enjuiciamiento Civil, equivalentes al 372 y 373 del Código de Enjuiciamiento Civil de California. Según estos preceptos el nombramiento de defensor descansa en la sana discreción de la corte, aún cuando

tuviera el menor tutor general. Bajo este punto de vista
deja de tener influencia alguna en la discusión de este caso,
el nombramiento de tutor que se hizo a los menores Trueba
Suárez por el consejo de familia, en España, a favor de
Bernardo Suárez Urrutia, en virtud de la incapacidad en
que por su estado de demencia se encontraba el padre de
dichos menores y cuya incapacidad fué declarada por la
Corte de Distrito de San Juan. Con estas premisas se hace
innecesario también considerar el error quinto del alegato
que se refiere a la admisión por la corte inferior de cierta
escritura de poder con el objeto de probar el nombramiento
de tutor de los menores realizado en España por el consejo
de familia y así determinar sus consecuencias legales en este
pleito.

Un caso ilustrativo de la forma o modo de solicitar el
nombramiento de un defensor judicial, es el siguiente:

"  *   *   * En efecto, no creemos que una petición escrita soli-
citando tal nombramiento sea necesaria. El nombramiento ha de
hacerse a solicitud de parte. Y esta solicitud puede hacerse en
corte abierta lo mismo que por escrito. Aunque es mejor práctica
radicar una solicitud alegando los hechos necesarios para demostrar
la jurisdicción de la corte, sin embargo no es mala práctica *hacer
la solicitud para tal nombramiento* oralmente." *Emeric* v. *Alvarado,*
64 Cal. 594.

De todos modos la jurisprudencia sostiene que el nombra-
miento de un defensor *ad litem* es materia procesal y no de
jurisdicción.

"El nombramiento de un defensor *ad litem* para un menor de-
mandado, al igual que la comparecencia de un *prochein ami* a nom-
bre de un menor demandante, es una cuestión de procedimiento y
no de jurisdicción. Que a demandante o demandado faltara tal re-
presentación haría la sentencia errónea pero no nula. Puede anu-
larse por auto de error *coram nobis,* o mediante moción a la misma
corte, o mediante una adecuada apelación; pero se ha resuelto ge-
neralmente que la validez de la sentencia no puede ser atacada por
este motivo en una acción colateral en que la sentencia sea sólo un
incidente de la controversia." 14 R.C.L. 286.

Por el cuarto error se alega por los apelantes que aún asumiendo que los procedimientos que se han discutido fueran legales, no pueden afectar a Bernardo Suárez y Rodríguez, abuelo materno de los menores y padre de los demás demandados.

Se fundan para ello en que la finca en cuestión figuraba en el registro de la propiedad una mitad, por concepto de gananciales, a favor del cónyuge viudo Bernardo Suárez Rodríguez, por defunción de su esposa María de Jesús Urrutia, y por consiguiente la sentencia solamente podía afectar a la mitad que correspondía a los herederos de la última.

Para aclarar la contensión que mantienen los apelantes en este punto, basta tener en cuenta el carácter de bien ganancial que tuvo la finca, que la misma estaba afecta a una hipoteca, que el procedimiento cuya legalidad se pone en tela de juicio tuvo por objeto la ejecución de la misma, y que además la sentencia no condenó ni podía condenar al cónyuge viudo Bernardo Suárez Rodríguez, pues éste en la fecha de la radicación de la demanda ordinaria había fallecido. Y esto fué alegado en el párrafo octavo de la demanda declarativa y asimismo quedó alegada la defunción de María de Jesús Urrutia y la resolución de haber sido declarados herederos de ella, su viudo Bernardo Suárez Rodríguez y sus legítimos hijos Bernardo, Jesús y Antonia Suárez Urrutia, de cuyos herederos había fallecido el viudo y dos hijos, y se demandaba al hijo sobreviviente y a los sucesores de los fallecidos, que fueron las personas que en el pleito aparecían teniendo interés, entre ellas los apelantes.

Los casos que citan los apelantes de *Miranda v. Registrador de San Juan,* 28 D.P.R. 395, y *Muñoz v. Registrador de Humacao,* 26 D.P.R. 780, no tienen aplicación alguna en este pleito. En aquellos casos se parte de la base, como así tenía que ser, de la supervivencia de uno de los cónyuges al que necesariamente había de emplazarse por su carácter de heredero especial independiente de los demás herederos.

Pero en el presente caso ambos cónyuges habían fallecido al interponerse la demanda.

Si todas las cuestiones que han sido examinadas no afectan a la sentencia ni a la subasta y adjudicación en el procedimiento ordinario para la ejecución de la hipoteca que impugnan los apelantes, parece lógico decir que se hace innecesario considerar el carácter de terceros hipotecarios de los demandados y que es objeto del error séptimo que apuntan los apelantes en su alegato.

Asimismo se puede decir del error primero apuntado relativo a la capacidad de los apelantes en su cualidad de herederos de sus respectivos causantes y que constituye el fundamento básico de su derecho a reivindicar.   Porque cualquiera que sea el derecho de los apelantes en ese punto y cualquiera que fuera la participación que les correspondiera o se determinara en la finca objeto de este pleito, es lo cierto que tal derecho esencia de su título, quedó extinguido en virtud de la ejecución de la hipoteca y cuyos procedimientos para su cobro en su finalidad se sostienen como legales.   De paso diremos sin embargo que si bien los apelantes en su demanda derivan su derecho como causahabientes de su madre Antonia María Suárez Urrutia y de sus tíos Bernardo y Jesús María Suárez y Urrutia, quienes a su vez traen causa de sus padres Bernardo Suárez Rodríguez y María de Jesús Urrutia, de la prueba aparece que Bernardo Suárez Urrutia no había muerto y se enmendó la demanda durante el curso del juicio, dejando subsistente la reclamación en cuanto se derivaba de los demás causantes.   Asimismo aparece que Bernardo Suárez Rodríguez contrajo segundas nupcias con Vicenta Fontanals a quien, por disposición testamentaria, legó en su favor el tercio de sus bienes, y del mismo modo resulta que Jesús María Suárez Urrutia falleció siendo casado y sin otorgar testamento.   Someramente diremos, como consecuencia de esos hechos, que la teoría de la demanda de ser los apelantes los únicos y universales herederos de su tío Jesús María no es sostenida por la prueba.

El falleció en 1903 bajo la vigencia del Código Civil revisado y los derechos hereditarios de su esposa Petrona de Jesús Santana se rigen por las prescripciones de dicho Código. Tal vez hubiera sido interesante seguir al abogado de los apelantes en el estudio que hace de los artículos 821 y 822 intentando demostrar su incompatibilidad con otras disposiciones del código y su imposible aplicación a cualquier caso pero aparte de que esta corte ya ha interpretado dichos preceptos (*Julbe* v. *Guzmán,* 16 D.P.R. 536) no es necesario que insistamos en su debida aplicación, dada la conclusión a que antes habíamos llegado. Parece sí necesario decir que la única participación indivisa que era fácil determinar perteneciente a los menores es la que procede de la mitad que por gananciales correspondería a su abuela materna. Esto representaría una sexta parte. Pero cualquiera que sea el derecho de los apelantes en ese extremo, como la participación que les resultaría de lo que proviniera de su abuelo materno, son cuestiones o derechos que carecen de interés o vida legal en virtud de haberse ejecutado la hipoteca que gravaba la finca, y que de este modo, por sucesivas trasmisiones, pasó a los actuales demandados.

No dejaremos de mencionar el error que los apelantes atribuyen a la corte inferior por no haber declarado la nulidad de la sentencia por ser ésta el resultado de una transacción en la que intervenían menores.

Se notará que esta es una cuestión de hecho. A ese fin declararon abogados de una y otra parte, incluso el abogado de los apelados. La corte inferior creyó las explicaciones de este último abogado y como cuestión de credibilidad, no encontramos que la corte cometiera error al resolver el conflicto, caso de existir, a favor de los apelados.

En virtud de todo lo expuesto la sentencia debe *confirmarse.*

El Juez Asociado Sr. Wolf no intervino en la resolución de este caso.